USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/20/2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MILLENIUM HEALTH, LLC, | |
| Plaintiff, | |
| -against- | 1:20-cv-09020 (MKV) |
| MARC S. KIRSCHNER, solely in his capacity as TRUSTEE of THE MILLENNIUM CORPORATION CLAIM TRUST and THE MILLENNIUM LENDER CLAIM TRUST, | ORDER GRANTING TRUSTEE'S MOTION FOR JUDGMENT ON THE PLEADINGS |
| Defendant. | |

MARY KAY VYSKOCIL, United States District Judge:

  Before the Court are Cross-Motions for Judgment on the Pleadings in this action seeking competing declaratory judgments interpreting a Loan Agreement, and damages for an alleged breach of that Agreement. On October 28, 2020, Plaintiff Millennium Health LLC filed a complaint seeking a declaratory judgment. ECF No. 2 ("Millennium Complaint"). Defendant Marc Kirschner (the "Trustee") counterclaimed on November 24, 2020. ECF No. 13 ("Kirschner Counterclaim"). After an initial conference, Millennium Health, LLC and Kirschner filed their respective motions for Judgment on the Pleadings. ECF No. 21 ("Millennium Motion"); ECF No. 20 ("Kirschner Motion"). Thereafter, both parties filed oppositions to the opposing Motion in further support of the respective Motions. *See* ECF No. 26 ("Millennium Reply"); ECF No. 29 ("Kirschner Reply").

  By their Motions, the Parties make mirror requests. Each party seeks a declaratory judgment that the Loan Agreement operates in the manner it urges. Millennium seeks a declaratory judgment that the Loan Agreement requires the Trustee to repay any loans with existing claim proceeds retained in the trust, including to simultaneously repay a newly requested

loan at the time it is made. Kirschner, as Trustee, seeks a declaratory judgment that Millennium breached the Loan Agreement by failing to fund the new loans requested. For the following reasons, Trustee Kirschner's Motion for Judgment on the Pleadings is GRANTED.

## BACKGROUND

### A. Factual Background

The facts underlying this case are not in dispute. In December 2015, the United States Bankruptcy Court for the District of Delaware entered an order confirming the Amended Prepackaged Joint Plan of Reorganization of Millennium Lab Holdings II, LLC ("the Plan"). Millennium Mem. [ECF No. 22] at 2; Kirschner Reply at 1. Millennium was a debtor in the Chapter 11 proceeding. Millennium Mem. at 2, Kirschner Mem. [ECF No. 20-1] at 3. Under the Plan, Millennium (in addition to "certain of its consenting lenders") and Kirschner entered into a trust agreement that created the Corporate Claim Trust (vested with all claims and causes of action of Millennium), and the Lender Claim Trust (vested with all individual claims and causes of action belonging to so-called "consenting lenders"). Kirschner was appointed as the trustee for both trusts. Millennium Mem. at 2-3; *see* Kirschner Mem. at 3. As trustee, Kirschner was charged, in part, with pursuing claims on behalf of the trusts, and with making distributions of net proceeds of trust assets to trust beneficiaries at least annually. Millennium Mem. at 1; Kirschner Mem. at 3.

The two trusts each were funded by a "non-loan contribution" of up to $13 million by Millennium, and loans from Millennium that may total up to $7 million. Millennium Mem. at 2; Kirschner Mem. at 4. In late December 2015, Millennium entered two "nearly-identical" loan agreements, one for each of the trusts. Millennium Mem. at 3. The initial $13 million was non-reimbursable to Millennium. Millennium Mem. at 3; Kirschner Mem. at 5. The $7 million loan

contributions were to be repaid by proceeds recovered from claims presented by the Trustee. Millennium Mem. at 3; Kirschner Mem. at 4.

Kirschner, as trustee, then began pursuing several claims on behalf of the trusts and used portions of the $13 million non-refundable contributions as initial funding for the litigation. Millennium Mem. at 5; Kirschner Mem. at 4. In June 2018, Kirschner resolved claims on behalf of the Trust and entered into confidential settlements with two defendants totaling $38 million. Millennium Mem. at 5; Kirschner Mem. at 4. The cash proceeds of the settlements were held in the trust through "approximately March 11, 2019," after which the trusts made an $18 million distribution to their beneficiaries, retaining $20.8 million. Millennium Mem. at 5; Kirschner Mem. at 4-5. From December 2015 and through December 2019, the trust "presented invoices for Trust expenses to Millennium," drawing from the $13 million non-loan contribution. Kirschner Mem. at 5. In December 2019, Kirschner, as Trustee, "requested the remainder of the [$13 million non-refundable contributions] and then a Loan under the Loan Agreements in the amount of $386,547.69." Millennium Mem. at 5-6; Kirschner Mem. at 5. While Millennium paid the remaining outstanding balance towards the $13 million non-loan contribution under the agreement, Millennium denied Kirschner's loan request in January 2020. Millennium Mem. at 6; Kirschner Mem. at 5. Since January 2020, Kirschner has requested eleven loans under the loan agreements, totaling $6,533,519.19, each of which Millennium has denied. Millennium Mem. at 6; Kirschner Mem. at 5.

### B. Contract Language

There are two "essentially identical" loan agreements at issue. Millennium Compl., Ex. 1 and 2 (the "Loan Agreement"). At the core of the dispute is the valid interpretation of Sections

3

1(a), (b) and (c) of the loan agreements. For brevity only these portions relevant here are reproduced below:

**Section 1(a)**: Loans. The Borrower may borrow amounts under this Agreement in any amount requested by the Borrower (each such borrowing a "Loan" ; together with each other Loan, the "Loans") during the Availability Period; provided, that (i) the aggregate principal amount of the Loans made hereunder plus the aggregate principal amount of all loans made under the [other Loan Agreement] shall not exceed the Maximum Loan Amount at any time, (ii) the proceeds of all Loans shall be used solely in furtherance of the Trust Purpose (including, but not limited to, for the avoidance of doubt, to fund and/or reimburse any of the fees, costs, and expenses of the professionals retained by the Borrower in connection therewith), (iii) no borrowing requests hereunder shall request Loans in an amount that would exceed the Available Amount at such time and (iv) if, after giving effect to the making of a Loan, the aggregate principal amount of Loans made under this Agreement (including such Loan requested) plus the aggregate principal amount of all loans made under the [other Loan Agreement], in each case, as of the date of such Loan, would exceed the Maximum Loan Amount, then the amount of the requested Loan shall be automatically reduced to the Available Amount at such time (for the avoidance of doubt, no Loans may be requested or funded until $13,000,000 has been contributed to the Trust by the Lender pursuant to Article V.F and Article V.G of the Plan ("Non Loan Contribution") and the entire amount of the Non Loan Contribution has been used by the Trust[s] in furtherance of the Trust Purpose and/or the trust purpose under the [other Trust Agreement], as applicable). Loans borrowed hereunder and prepaid or repaid may not be reborrowed.

**Section 1(b)**: Payment. The outstanding principal under this Agreement will be due and payable in full on the Maturity Date; provided, however, that the Borrower shall not be required to pay any amounts outstanding hereunder unless the Borrower has received proceeds from the [Trust Assets], whether from settlement, litigation, settlement, judgment or otherwise ("Claim Proceeds").

**Section 1(c)**: Prepayment. The Borrower shall prepay any Loans then outstanding from any Claim Proceeds received by the Borrower promptly upon receipt thereof even if received prior to the Maturity Date, minus any fees, costs, and expenses of the professional retained by the Borrower (and any other fees, costs or expenses incurred by the Borrower in connection with converting the [Trust Assets] to Claim Proceeds) outstanding at such time.

The Parties are in agreement that the Loan Agreements at issue contain a forum selection clause electing to apply New York law. Loan Agreement § 8(c); Millennium Mem. at 4; Kirschner Mem. at 10.

**LEGAL STANDARD**

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Motions for judgment on the pleadings are assessed under the same standard as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim. *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006). That is, "[j]udgment on the pleadings is appropriate where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings." *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir. 1988). The Court is empowered to consider "the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (internal quotation marks omitted). When considering a motion for judgment on the pleadings under Rule 12(c), the Court must accept the facts alleged in the Complaint as true and draw all reasonable inferences in favor of the non-moving party, however the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

**DELAWARE BANKRUPTCY ACTION**

As a threshold matter, the Court is forced to examine why this case—that arises from a Trust Agreement created under a reorganization plan approved by the United States Bankruptcy Court for the District of Delaware—should be entertained in the Southern District of New York. In the order confirming the prepackaged reorganization, Chief Judge Silverstein expressly retained "exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases and the Plan *to the fullest extent permitted by law*." Order Confirming Prepackaged Joint Chapter 11 Plan ¶ 62, ECF No. 195, *In re Millennium Lab Holdings II, LLC* (Bankr. D. Del. Dec.

14, 2015) (emphasis added). But, when this dispute initially arose and Trustee sought to have the case reopened in the bankruptcy court, Judge Silverstein stated her jurisdiction was "not exclusive," even though she recognized that there existed "related-to jurisdiction over the funding dispute." Transcript of October 13, 2020 Hearing at 9:12, 10:18, *In re Millennium Lab Holdings II, LLC* (Bankr. D. Del. Oct. 13, 2020).

Turned out of the court which retained jurisdiction and with nowhere else to go, the Parties have arrived here. While the Court has both subject matter and personal jurisdiction over the claims and the parties, the Court exercises this jurisdiction with reluctance.

## ANALYSIS

Under well-established New York law, whether a contract is ambiguous is a question of law for the Court. *See, e.g.*, *Law Debenture Tr. Co. of N.Y. v. Maverick Tube Corp.*, 595 F.3d 458, 465 (2d Cir. 2010). But, "[w]hen a contract is ambiguous, its interpretation becomes a question of fact not appropriately resolved on a motion for judgment on the pleadings or for dismissal." *Citibank, N.A. v. Morgan Stanley & Co. Int'l*, 724 F. Supp. 2d 398, 404 (S.D.N.Y. 2010); *Edwards v. Sequoia Fund, Inc.*, 938 F.3d 8, 13 (2d Cir. 2019). The Parties here both assert that their respective interpretations militate in favor of resolution at this stage. While "[t]he language of a contract is not ambiguous . . . simply because the parties urge different interpretations," *Dessert Beauty Inc. v. Platinum Funding Corp.*, 519 F. Supp. 2d 410, 418 (S.D.N.Y. 2007), a contract *is* ambiguous where it is "reasonably susceptible to more than one reading, or [is] one as to which reasonable minds could differ." *Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 113 (2d Cir. 2005). The Court addresses the Parties' interpretations in turn.

### A. *The Competing Interpretations*

Millennium claims that before the Trustee can seek additional loans, Millennium is entitled to "prompt repayment of any amounts loaned under the Loan Agreements from 'Claim

Proceeds' recovered by" Kirschner.  Millennium Mem. at 4.  Under the loan agreements, "claim proceeds" are defined as "proceeds from the [] Trust Assets, whether from settlement, litigation, judgment or otherwise."  Millennium Compl., Ex. 1 and 2 at 2.  Millennium maintains that under the loan agreements it is entitled to "any amounts recovered on account of a claim or cause of action received by either Trust," Millennium Mem. at 4, including the amount still retained by Kirschner from the confidential settlements, and that it cannot make any new loans to Kirschner under the agreement because doing so immediately would cause a reciprocal, identical payment of the same amount *back* to Millennium as reimbursement.  See Millennium Mem. at 9.  Millennium highlights in its briefing that Section 1(c) of the loan agreements states that the trusts "shall prepay any Loans then outstanding from any Claim Proceeds received by the Borrower promptly upon receipt thereof."  Millennium Mem. at 9.  Millennium essentially argues that the Trustee is not entitled to seek any additional loans while it retains any settlement funds and instead must immediately pay back any newly funded loans simultaneously with the making of the new loan.  Millennium Reply at 10.  Millennium also does not dispute the amount of additional loans requested by the Trustee or that it has declined to fund any loan requests made by Kirschner as Trustee.  See Millennium Mem. at 6; Millennium Reply at 10.

It is undisputed that the trust received $38 million in proceeds from the settlements with proposed defendants in 2018.  Kirschner Mem. at 4-5.  Millennium maintains that since the trusts still retain portions of those funds, they retain "claim proceeds" under Section 1(b) of the loan agreements.  Millennium Compl., Ex. 1 and 2 at 2 (defining "Claim Proceeds" as "proceeds from the [] Trust Assets, whether from settlement, litigation, judgment or otherwise.")  And, thus, Millennium argues, Kirschner's loan request ("any loan" under Section 1(c)) would need to be "promptly" repaid from that fund ("any Claim Proceeds" under Section 1(c).)  In short,

Millennium does not dispute that it had an obligation to fund the initial non-loan contribution of $13 million, Millennium Mem. at 4, or that it has paid the full $13 million, Millenium Mem. at 5, but disagrees that it is required to fund any loans toward the reimbursable $7 million maximum loan while any Claim Proceeds are retained by the trust. Millennium Mem. at 6.

The Trustee maintains that there is no requirement that the Trusts have depleted other sources of funding before requesting a loan under the Agreements. Kirschner Mem. at 13. Instead, the Trustee states that because it has complied with the requirements to draw a loan under the Agreements, failure to do so is breach. Kirschner Mem. at 13, 20-21. Specifically, the Trustee argues that because he has performed his obligations under the Loan Agreements, he is entitled to draw a loan and Millennium must fund the loans requested. *See* Kirschner Mem. at 12-15. Kirschner argues that Millennium's emphasis on the "any" language ignores other limiting language in Section 1(c). Kirschner maintains that the claim proceeds need only be used for repayment of loans made *before* the claim proceeds are received. *See* Kirschner Mem. at 17. Kirschner highlights the language in Section 1(c) that the trusts shall "prepay any Loans <u>then outstanding</u> from any Claim Proceeds received by the Borrower <u>promptly upon receipt thereof</u> even if received prior to the Maturity Date." Kirschner Mem. at 17; Loan Agreement § 1(c).

### B. *The Only Reasonable Interpretation of the Loan Agreement is That of the Trustee*

A contract is ambiguous only if it is capable of "more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement." *Bayerische Landesbank, N.Y. Branch v. Aladdin Cap. Mgmt. LLC*, 692 F.3d 42, 53 (2d Cir. 2012); *Mellon Bank, N.A. v. United Bank Corp.*, 31 F.3d 113, 115 (2d Cir. 1994). For the reasons that follow, Court finds that only the reading of the language sponsored by the Trustee is reasonable, and agrees with both Parties that the language is unambiguous.

As both Parties agree, the law is clear that courts must give effect to all words of an agreement. Millennium Mem. at 11; Kirschner Mem. at 18-19. To be sure, "courts may not by construction add or excise terms, nor distort the meaning of those used and thereby make a new contract for the parties under the guise of interpreting the writing." *Cirino v. City of New York*, 754 F.3d 114, 123 (2d Cir. 2014) (citation omitted). Only Trustee's interpretation would be faithful to that bedrock principle of contract interpretation.

By the express term of the Agreement, "[the Trustee] shall prepay any Loans *then outstanding* from any Claims Proceeds received by the [Trustee] promptly upon receipt thereof . . . ." Loan Agreement § 1(c) (emphasis added). Millennium's proposed interpretation effectively rewords "then outstanding" from Section 1(c) of the Agreement. These are words of limitation on the Trustee's obligations to utilize claim proceeds to repay loans. "The cardinal doctrines of contract interpretation instruct courts to read a contractual document in a manner that confers meaning upon all of its terms and renders the terms consistent with one another." *Energy Transp., Ltd. v. M.V. San Sebastian*, 348 F. Supp. 2d 186, 203 (S.D.N.Y. 2004). "Outstanding" simply means "unpaid," or "continuing to exist." *Outstanding*, BLACKS LAW DICTIONARY (11th ed. 2019); *Outstanding*, MERRIAM-WEBSTER ONLINE DICTIONARY, https://www.merriam-webster.com/dictionary/outstanding. The Court reads the unambiguous language of the Agreement according to its plain meaning: a loan *then outstanding* (a loan previously granted that remains unpaid) will be repaid with claim proceeds when they are received. *See Brooke Grp. Ltd. v. JCH Syndicate 488*, 87 N.Y.2d 530, 663 (1996) ("The words and phrases used by the parties must, as in all cases involving contract interpretation, be given their plain meaning."); *Greenfield v. Philles Records, Inc.*, 98 N.Y.2d 562, 569 (2002) (court must enforce unambiguous contract according to the plain meaning of its terms); *see also R/S*

9

*Assocs. v. N.Y. Job Dev. Auth.*, 98 N.Y.2d 29, 33 (2002) (using a dictionary to determine the ordinary usage of an unambiguous contract term).

This interpretation does not render meaningless any of the words Millennium highlights as key to the agreement. Section 1(c) of the agreements state that the Trustee will prepay "any Loans" from "any Claim Proceeds." Those words are fully reconcilable with the Court's plain reading of the language. Once a loan is made, and the Trustee receives claim proceeds, the loan must be repaid with funds from those proceeds. But that repayment is not required under the contract until after the loan is "then outstanding." To require otherwise would be temporally illogical. It strains reason to believe that the Parties would enter into an agreement through which loans requested would instantaneously be subject to repayment in a Sisyphean loop.

At oral argument, both parties represented that the plain, unambiguous language contained in the four corners of the loan agreements would resolve this dispute in their favor. However, in its moving papers, Millennium argues that independent reference to the separate Trust Agreements would support its interpretation. While it is true that under New York law "it is the general rule that written contracts executed simultaneously and for the same purpose must be read and interpreted together," *Liberty USA Corp. v. Buyer's Choice Ins. Agency LLC*, 386 F. Supp. 2d 421 (S.D.N.Y. 2005), that is true only "[i]n the absence of anything to indicate [a] contrary intention." 2 N.Y. Jur 2d, Contracts § 258. Here, the loan agreements include an integration clause. *See* Millennium Compl., Ex. 2 at 11(f). "[B]y the mechanism of an integration clause, the parties make explicit their intent to have the current agreement be exclusive with respect to the object of their contract and to bar either party from introducing evidence of a collateral agreement." *Desarrolladora Farallon S. de R.L. de C.V. v. Cargill Fin. Servs. Int'l, Inc.*, 666 F. App'x 17, 25 (2d Cir. 2016) (summary order). This integration clause

10

reinforces what the Court does in reading the loan agreements: "a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms." *Greenfield*, 98 N.Y.2d at 569.

Further, if the Court *were* to consider the Trust Agreements in interpreting the language—a proposition the Court approaches with apprehension since the plain language of the Loan Agreements is clear and unambiguous and there exists an integration clause—the Court concludes that the Trust Agreements only further bolsters Trustee's interpretation. As the Trustee points out, the Trust Agreements define the terms "Lender Claim Trust Recoveries" and "Corporate Claim Trust Recoveries" as proceeds recovered "*at any time*, the amount of Cash or other consideration obtained or paid to the Trustee . . . in connection with the monetization of any Trust Assets." *See* Carty Decl. [ECF No. 23], Exhibits J and K at Appendix A (emphasis added). The Parties could have chosen to employ the clear temporal language included in the Trust Agreements in Section 1(c), which would have made it manifestly evident that the Parties intended to have the loans under the Loan Agreement repaid "at any time." But instead, Section 1(c) only contemplates that loans "then outstanding" must be repaid with any claim proceeds. The Parties' failure to employ this language indicates their intent to have Section 1(c) limited to the language contained therein. *See Int'l Fidelity Ins. Co. v. County of Rockland*, 98 F. Supp. 2d 400, 412 (S.D.N.Y. 2000) ("Sophisticated lawyers . . . must be presumed to know how to use parallel construction and identical wording to impart identical meaning when they intend to do so, and how to use different words and construction to establish distinctions in meanings.").

## **DAMAGES**

The Trustee seeks judgment in favor of his claim that Millennium breached its obligations under the Loan Agreements. *See* Kirschner Mem. at 11. A breach of contract claim

requires four elements: "(1) the existence of a contract, (2) performance by the party seeking recovery, (3) non-performance by the other party, and (4) damages attributable to the breach." *RCN Telecom Servs. v. 202 Ctr. St. Realty LLC*, 156 Fed. Appx. 349, 351 (2d Cir. 2005). The Court concludes that Millennium has breached its obligations under the loan agreements. Millennium does not dispute that Kirschner has "complied with the notice provisions of the Loan Agreements" to request the loan funding. Millennium Reply at 11. Millennium's failure to fund the loans requested because of its recursive interpretation of Section 1(c) is not justifiable and constitutes a breach of the Loan Agreement.

By this action, Kirschner seeks damages representing the requested $6,533,519.19 in loan proceeds under the $7 million reimbursable portion of the Loan Agreement. Kirschner Decl. [ECF No. 20-2] ¶ 29. In addition, Kirschner seeks "interest, costs, and attorneys' fees for this litigation." Kirschner Mem. at 20. Kirschner is directed to file its accounting of damages and legal authority, if any, supporting its entitlement to those damages on or before October 14, 2021. Millennium is directed to file any opposition on or before November 15, 2021, and Kirschner shall reply on or before December 1, 2021. This case will remain open pending resolution of the amount of damages.

I. **CONCLUSION**

Accordingly, Kirschner's Motion for Judgment on the Pleadings [ECF No. 20] is GRANTED, and Millennium's Motion for Judgment on the Pleadings [ECF No. 21] is DENIED.

**SO ORDERED.**

Date: September 20, 2021  
New York, NY

*Mary Kay Vyskocil*  
**MARY KAY VYSKOCIL**  
**United States District Judge**